# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| ) | |
| ) | |
| **v.** ) | **Criminal No. 07-cr-00152-4 (ESH)** |
| ) | |
| **ERNEST MILTON GLOVER,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |

---

## MEMORANDUM OPINION

Before the Court is defendant Ernest Glover's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)(i).  (*See* Def.'s Mot., ECF No. 429-2.)  Glover states that he "suffers from a history of hypertension and high blood pressure, has been diagnosed as prediabetic, and has a pre-existing lung condition, [all of] which place him at serious risk of becoming severely ill from COVID-19."  (*Id.* at 1.)  The government opposes Glover's motion, arguing that "defendant has not met his burden of establishing that a sentence reduction is warranted under the statute. (*See* Gov't's Opp. at 2, ECF No. 437.)  For the reasons stated below, the Court grants Glover's motion for release.

## BACKGROUND

"On March 13, 2008, following a jury trial, Mr. Glover was found guilty of conspiracy to possess[] with intent to distribute one kilogram or more of phencyclidine, in violation of 21 U.S.C. § 846."  (Def.'s Mot. at 1.)  "In 2017, Mr. Glover received executive clemency which reduced his sentence to 240 months of imprisonment."  (*Id.* at 2.)  According to records from the Bureau of Prisons ("BOP"), Glover is projected for release on October 25, 2025, which means he

has served approximately 70% of his sentence.  (*See* BOP Sentence Computation Data at 1, ECF No. 425-1; *see also* Def.'s Mot. at 2.)

Glover filed a *pro se* motion for compassionate release on May 27, 2020.  (*See* ECF No. 423.)  Counsel was subsequently appointed for Glover, and he requested that Glover's *pro se* motion be dismissed without prejudice so that Glover could exhaust his administrative remedies. (*See* ECF Nos. 427, 428.)  "On June 14, 2020, Mr. Glover filed a request for compassionate release with the warden of FCI Schuylkill," where he is currently housed.  (*See* Def.'s Mot. at 2.) Glover filed the instant motion for compassionate release on July 23, 2020.  He also sent two letters to the Court in support of his motion, which the Court has reviewed as part of its analysis.

## ANALYSIS

### I.      LEGAL STANDARD

18 U.S.C. § 3582(c) provides, in relevant part, that—

> The court may not modify a term of imprisonment once it has been imposed except that . . .
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

This section represents an expansion of the original regime of compassionate release, which only allowed courts to hear motions brought by the Director of the BOP.  As amended by the First Step Act of 2018, the section now permits a *defendant* to move for compassionate release on his

own behalf.  *See* Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018) ("Increasing the Use and

Transparency of Compassionate Release").  However, before coming to court the statute requires

that a defendant either exhaust his administrative remedies within the BOP or wait thirty days

after submitting a request to the BOP that it file a motion on his behalf.  For a Court to grant a

motion for compassionate release (made by either the BOP or a defendant), it must find

"extraordinary and compelling reasons" to reduce a defendant's sentence.[1]  Furthermore, even if

a Court concludes that a defendant has presented such reasons, it must also "consider[] the

factors set forth in section 3553(a)."  *See* 18 U.S.C. § 3582(c)(1)(A).

As noted above, Glover made a request to the warden of FCI Schuykill on June 14, 2020,

that a motion for compassionate release be made on his behalf.  (*See* Def.'s Mot. at 2.)  As more

than 30 days have passed since that request was made, Glover has exhausted his administrative

remedies.  *See* 18 U.S.C. § 3582(c)(1)(a).  The Court thus turns to the merits of Glover's motion.

## II.     MOTION FOR RELEASE

### A.     Extraordinary and Compelling Reasons

Glover lists a number of "serious health conditions that give rise to heightened

vulnerability to [COVID-19]": (1) his "history of hypertension" and high cholesterol; (2) his

diagnosis as a pre-diabetic; and (3) his "history of lung damage," including "the inflammatory

lung disease Sarcoidosis."  (*See* Def.'s Mot. at 6-7.)  He also points to his age of 56, as the

Centers for Disease Control and Prevention ("CDC") has found that "the risk for severe illness

from COVID-19 increases with age."  (*See id.* at 6 (internal quotation marks omitted).)

---

[1] Section 3582(c)(1)(A) also provides that if a defendant is at least 70 years old and has served a certain number of years in prison, his sentence may be reduced.  *See* 18 U.S.C. 3582(c)(1)(A)(ii). However, as Glover is only 56, that subsection is not relevant, and the Court need only consider whether there exist "extraordinary and compelling reasons."

The commentary to Section 1B1.13 of the United States Sentencing Guidelines defines "extraordinary and compelling reasons" as including: (1) certain medical conditions; (2) the age of the defendant; (3) family circumstances of the defendant; and (4) reasons "other than, or in combination with, the reasons described" in the three previous subsections.  Medical conditions warranting a reduction in sentence include both terminal illnesses and also other chronic conditions that "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* at Application Note 1(A)(i)-(ii).  The "extraordinary and compelling reason," whatever it may be, "need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment."  *See id.* at Application Note 2.  Regardless of whether the Court considers Section 1B1.13 and its commentary binding or merely helpful in light of the passage of the First Step Act,[2] "[t]he court is in a unique position to determine whether the circumstances warrant a reduction" of a defendant's sentence.  *See id.* at Application Note 4.

 First, the government argues that "[i]f an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of 'extraordinary and compelling reasons,'"

---

[2] Section 1B1.13 only references "motion[s] of the Director of the Bureau of Prisons" when describing what constitutes an "extraordinary and compelling reason," as it has not been amended since the First Step Act of 2018 provided an avenue for defendants to make their own motions.  In that way it is "anachronistic," *United States v. Asaro*, 2020 WL 1899221, at *4 (E.D.N.Y. Apr. 17, 2020) (internal quotation marks omitted), as it has not been changed since Congress "further increase[d] the use of compassionate release and . . . explicitly allow[ed] courts to grant such motions even when [the BOP] finds they are not appropriate."  *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019).  "Because the Commission's statutory authority is limited to explaining the appropriate use of sentence-modification provisions under the *current* statute," *United States v. Cantu*, 423 F. Supp. 3d 345, 350 (S.D. Tex. 2019) (emphasis in original), several courts have concluded that while the current policy statement may be helpful, "it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction" under the regime created by the First Step Act.  *Beck*, 425 F. Supp. 3d at 579.

but that Glover has provided evidence of no such conditions.  (*See* Gov't's Opp. at 6.)  However, it "would be fundamentally unfair, if not contrary to the statute, to slam the compassionate release door on any inmate whose medical condition does not appear on the CDC's list."  *See United States v. Powell*, 2020 WL 4578682, at *3 (D.D.C. June 18, 2020).

At the outset, Glover has hypertension, which the CDC states "may" increase the risk of severe illness from COVID-19.  *See* Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed August 21, 2020) (hereinafter, "CDC High-Risk Conditions").  Indeed, the CDC's preliminary hospitalization data as of August 15, 2020, shows that over half of all adults hospitalized for COVID-19 have hypertension.  *See* COVID-NET, *COVID-19 Laboratory-Confirmed Hospitalizations*, https://gis.cdc.gov/grasp/COVIDNet/COVID19_5.html (last accessed August 21, 2020).  Currently, Glover is only taking medication for his hypertension as a "precaution."  (*See* Gov't's Opp. at 7 (internal quotation marks omitted).)  However, Glover's history of hypertension is well-known—it has been documented at least as far back as his sentencing in 2007.

Glover also alleges he is at risk due to documented issues with his lungs.[3]  The government asserts that Glover's "left lung is clear," and that therefore the Court should disregard this injury.  (*See id.* at 8 (internal quotation marks omitted).)  However, the injury Glover suffered in 1985 was to his *right* lung.  This has resulted in "volume loss," "chronic pleural thinning," and a "pleural-parenchymal abnormality."  (*See* Def.'s Mot. at 7 (internal quotation marks omitted).)  While a lung *injury* is not listed among the CDC's high-risk

---

[3] Glover "also asserts that he was exposed to tuberculosis as a child and has developed the inflammatory lung disease Sarcoidosis."  (*See* Def.'s Mot. at 7.)  However, there is no documentation in Glover's BOP medical records to support his assertion that he has sarcoidosis, and thus the Court does not take it into consideration.

categories, it is clear from a review of the listed conditions that lung issues put individuals at risk for a more severe illness if they contract COVID-19.  *See* CDC High-Risk Conditions.  This is unsurprising given that persistent shortness of breath and trouble breathing are some of the most consistently cited symptoms of COVID-19 and, in fact, trouble breathing is an "emergency warning sign[]" that medical care should be sought immediately.  *See* CDC, *Symptoms of Coronavirus*, https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last accessed August 21, 2020).

Lastly, the government argues that "the Court should consider whether the inmate is more likely to contract COVID-19 if he or she is released than if he or she remains incarcerated," and that FCI Schuylkill has reported only one positive case.  (*See* Gov't's Opp. at 6-7 & n.5.) However, "it cannot seriously be disputed that an individual in prison is less able to control his own surroundings and exposure than he would be if living in single-family residenc[e] in the community."  *See Powell*, 2020 WL 4578682, at *4.  This is particularly salient for an individual at Glover's age, as the CDC reports that the hospitalizations per 100,000 people increase by approximately 60% between individuals ages 40-49 and those aged 50-64.  *See* CDC, *Older Adults*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last accessed August 21, 2020).

These factors, when considered altogether, convince the Court that Glover has provided sufficient evidence to demonstrate an "extraordinary and compelling reason" warranting compassionate release.

**B.     Section 3553(a) Factors**

Having concluded that Glover has provided an "extraordinary and compelling reason" justifying relief, the Court must now look at the factors under 18 U.S.C. § 3553(a) and determine

whether Glover meets the statutory requirements for a sentence reduction.  A sentence must take into account "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as, *inter alia*, afford adequate deterrence, provide just punishment, and protect the public.  *See id.* § 3553(a)(1)-(2).  Moreover, a sentence must be "sufficient, but not greater than necessary," to promote these goals.  *See id.* § 3553(a).

In 2008, the Court was required to sentence Glover to a life sentence due to his two prior felony drug convictions.  *See* 21 U.S.C. § 841(b)(1)(A)(iv).  Of course, the Court is mindful of the seriousness of that offense, and of the harm Glover caused to the community.  However, both of Glover's predicate convictions were at least ten years old at the time of sentencing in this case.  Indeed, he was only 19 at the time of the first predicate conviction, and it involved a very small quantity of drugs.  Moreover, as was observed at the time of sentencing, "[h]is multiple addictions fueled his criminal activity and resulted in his contacts with the criminal justice system."  (*See* Def.'s Sentencing Mem. at 2, ECF No. 247.)  Glover has already served a lengthy sentence, almost twelve years, which surely "reflect[s] the seriousness of [his] offense, and promote[s] respect for the law."  *See* 18 U.S.C. § 3553(a)(1).

Furthermore, the Court is impressed by the changes Glover has made since he was incarcerated for the instant offense.  Not only has Glover been a "model inmate"—learning new skills and avoiding infractions—but he has been a leader to other inmates as well.  (*See* Def.'s Mot. at 10.)  While incarcerated at FCI Cumberland, he acted as a mentor and facilitator in the Young Men Incorporated program, which teaches leadership and re-entry skills to inmates.  (*See id.*)  And, since being at FCI Schuykill, Glover has been active in the inmate church and even preached on occasion.  (*See id.*)  He is praised by a staff chaplain who knew him at both institutions, saying Glover "promote[s] peace and harmony," and is a "leader" in the inmate

community.  (*See* Weaver Letter, ECF No. 429-3.)  The "characteristics" of the defendant thus suggest that a sentence of time served will be "sufficient, but not greater than necessary" to achieve the goals of § 3553(a).

## CONCLUSION

For the foregoing reasons, the Court will grant Glover's Motion for Compassionate Release (ECF No. 429-2).  A separate Order accompanies this Memorandum Opinion.


ELLEN S. HUVELLE
United States District Judge

Date: August 21, 2020